UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KELVIN CARTER, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 23-cv-3348 |
| BRITTANY GREENE, *et al.*, | ) |
|     Defendants. | ) |

### MERIT REVIEW ORDER

Plaintiff, proceeding *pro se*, files a Complaint under 42 U.S.C. § 1983 claiming his constitutional rights were violated while he was incarcerated at Western Illinois Correctional Center ("Western"). (Doc. 1). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff names Warden Brittany Greene, Sergeants Christian Spears and Bryan Klingele, and Lieutenant Shoop as Defendants.

Plaintiff alleges his cellmate, Robert Ellerbe, attacked him on September 23, 2022. Ellerbe punched Plaintiff in the face and forehead and choked Plaintiff until he nearly blacked out. After

1

the attack, Plaintiff and Ellerbe were escorted to segregation. After Ellerbe received an Inmate Disciplinary Report ("IDR") due to the fight, he threatened Plaintiff and blamed him for being punished.

On December 5, 2022, Plaintiff was informed he was being moved to 1 house A wing cell 79. Plaintiff informed Defendant Spears he had an enemy (Robert Ellerbe) on that wing, that Ellerbe assaulted him in September 2022, and threatened him after receiving an IDR. Defendant Spears allegedly told Plaintiff he did not care and escorted him to segregation for refusing to move to cell 79.

When Plaintiff arrived in the segregation unit, he encountered Defendant Shoop, who informed Plaintiff he would be placed in segregation and receive an IDR unless he agreed to move to cell 79. Plaintiff informed Defendant Shoop that Ellerbe assaulted him and threatened to physically harm him. Defendant Shoop told Plaintiff he did not care and told him to move to cell 79 or he would remain in segregation.

Plaintiff chose to move to cell 79 because he did not want to be placed in segregation where phone restrictions would be imposed. Plaintiff states that talking to family and friends on the phone helps him cope with his mental illnesses.

When Plaintiff arrived at 1 cellhouse on December 12, 2022, he informed Defendant Klingele that Ellerbe had attacked him on September 23, 2022, and threatened further violence against him. Defendant Klingele allegedly dismissed Plaintiff's fears and told him that fights happen in prison. Plaintiff went into his assigned cell.

Later, Plaintiff exited his cell to walk to the shower. Plaintiff alleges that Ellerbe followed him and attacked him as he was walking to the shower. During the attack, Plaintiff looked to the wing door for an officer who could help him. Plaintiff alleges he saw Defendant Klingele laughing

outside the window. Plaintiff states that "quite some time passed" before Defendant Klingele and other correctional officers entered the wing. At this time, Plaintiff alleges he was bent forward attempting to shield himself from Ellerbe's violent attack.

Defendant Klingele sprayed Plaintiff in the face with pepper spray several times. Plaintiff alleges he did not offer any resistance, but Defendant Klingele allegedly grabbed Plaintiff's head and twisted and jerked it up and back very hard. He then twisted Plaintiff's head to the other side so sharply Plaintiff feared his neck would break. Defendant Klingele pressed Plaintiff up against the window, pressed his forearm against Plaintiff's neck, and smashed Plaintiff's face against the glass. Plaintiff alleges Defendant Klingele's use of excessive force caused excruciating pain.

Plaintiff also claims the attack caused long-term physical and psychological injuries. Plaintiff alleges his scoliosis was aggravated by the pushing, pulling, and twisting. Plaintiff suffers from constant pain in his neck and back and had limited mobility. Plaintiff also experiences nightmares, flashbacks, and panic attacks and has trouble sleeping. In addition, the dosage of Plaintiff's medication for his existing PTSD and depression had to be increased.

Plaintiff was escorted to segregation after the attack. Defendant Shoop instructed a nurse to rinse Plaintiff's eyes, but when Plaintiff tried to tell the nurse about the extreme pain in his neck and back, Defendant Shoop intervened and removed Plaintiff from the room.

Plaintiff told Defendant Shoop the water used to rinse his eyes caused the pepper spray residue to run down his body. Plaintiff told Defendant Shoop it felt like his body was on fire, especially his genitals. He asked Defendant Shoop if he could take a shower to wash the pepper spray residue off, but Defendant Shoop refused. The pepper spray residue remained on Plaintiff's body for days.

Plaintiff received an IDR for disobeying a direct order, but it was later expunged. Plaintiff was released from segregation after a short time; however, he was transferred to a more restrictive prison with less movement, less out-of-cell time, and limited access to programs. Plaintiff alleges Defendant Warden Greene transferred him to punish him and retaliate against him for filing grievances.

Plaintiff also alleges Defendant Greene knew correctional security staff at Western used excessive force and caused prisoners to suffer unreasonable injuries. She was also allegedly aware that prisoners who were assaulted by other prisoners were returned to the same area. Plaintiff alleges that as the warden, she could have stopped the unconstitutional conduct, but she either ignored it or encouraged this conduct, which lead to Plaintiff's injuries.

In addition, Plaintiff brings a claim for intentional infliction of emotional distress ("IIED") against Defendants Greene, Shoop, Spears, and Klingele and a battery claim against Defendant Klingele under Illinois state law.

**ANALYSIS**

To plead a claim that prison officials violated his Eighth Amendment rights by failing to protect him from the attack on December 12, 2022, Plaintiff must allege facts suggesting that the prison officials were deliberately indifferent to his safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994). But because "prisons are dangerous places" and guards lack "control over crowding and other systemic circumstances," *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004), "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.' . . . [This means that the plaintiff] had to allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious,

4

culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).

Here, Plaintiff alleged that Defendants Spears, Schoop, and Klingele ignored a known, preventable threat by placing Plaintiff on the same housing unit and wing as Ellerbe, even though they knew Ellerbe attacked Plaintiff on September 23, 2022, and threatened further violence. Shortly after Plaintiff moved to cell 79, he was violently attacked by Ellerbe. Plaintiff will be allowed to proceed on an Eighth Amendment failure to protect claim against Defendants Spears, Shoop, and Klingele.

Regarding Defendant Warden Greene, Plaintiff alleges she knew prisoners who were assaulted by other prisoners were returned to the same area, but this is insufficient to allege a failure to protect claim against Defendant Greene. It appears that Plaintiff is trying to hold Defendant Greene liable based on her supervisory position; however, liability under § 1983 is based on personal responsibility. Defendant Greene cannot be held liable for the misdeeds of other prison staff simply because of her supervisory role. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Supervisory prison staff can be held liable for deliberate indifference if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Plaintiff's allegations against Defendant Greene are too tenuous for the Court to conclude that she was subjectively aware that Plaintiff was at risk of harm and that she condoned, facilitated, or turned a blind eye to the risk. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

5

On December 12, 2022, Plaintiff alleges that Ellerbe attacked him a second time. As Plaintiff was being punched and pummeled, Plaintiff saw Defendant Klingele "clearly laughing outside the window." (Doc. 1 at p. 10). "Quite some time passed" before Klingele and other correctional officers intervened. *Id.* A failure to intervene claim requires evidence of the following: (i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Based on Plaintiff's allegations, the Court finds that Plaintiff has alleged an Eighth Amendment failure to intervene claim against Defendant Klingele.

Next, Plaintiff claims that Defendant Klingele sprayed him in the face with pepper spray, twisted and jerked his head, smashed his face up against a window, and pressed his forearm against Plaintiff's neck. To assert an Eighth Amendment excessive force claim, Plaintiff must allege that the force was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). This is so, as prison officials considering the use of force must balance the threat presented to inmates and prison officials against the possible harm to the inmate against whom the force is to be used. *Id.* at 320. "[W]hile a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimis* use of physical force.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001) (internal citations omitted). The Court must balance the amount of the force used against the need for the force. If no force is necessary, even *de minimis* force may not be used. *Reid v. Melvin*, 695 F. App'x 982, 983-84 (7th Cir. 2017). The Court finds Plaintiff has alleged an Eighth Amendment excessive force claim against Defendant Klingele.

After the incident, Plaintiff was taken to the segregation unit. Plaintiff alleges that Defendant Shoop did not allow Plaintiff to take a shower to remove the burning pepper spray residue from his body or seek medical treatment for his neck and back. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). The Court finds that Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Shoop.

Plaintiff claims that his IDR was expunged, and he was released from segregation after a short time; however, he was transferred to a more restrictive prison with less out-of-cell time and limited programming. Plaintiff alleges that Defendant Greene transferred him to punish him and to retaliate against him for filing grievances about the alleged incidents. To establish First

7

Amendment retaliation, Plaintiff must successfully allege that (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the [defendant's] action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Prisoners have a protected First Amendment right to file grievances. *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Plaintiff has pled a colorable First Amendment retaliation claim against Defendant Greene.

Plaintiff also asserts a state law claim for the intentional infliction of emotional distress ("IIED"). To prevail on an IIED claim under Illinois law, Plaintiff must show: "(1) the defendants engaged in 'extreme and outrageous' conduct; (2) the defendants 'either intended that [their] conduct would inflict severe emotional distress, or knew there was a high probability that [their] conduct would cause severe emotional distress'; and (3) the defendants' 'conduct in fact caused severe emotional distress.'" *McGreal v. Village of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017) (quoting *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016)); *see also Dixon v. County of Cook*, 819 F.3d 343, 351 (7th Cir. 2016). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). "Fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id.* at 10. "Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (citing *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)).

Here, Plaintiff alleges he experienced emotional distress, including excessive sleep deprivation, nightmares, night-terrors, flashbacks, and panic attacks. In addition, the dosage of

8

Plaintiff's medication for his existing PTSD and depression had to be increased. At this juncture, the Court finds Plaintiff has stated a plausible IIED claim against Defendant Klingele, who allegedly laughed as Plaintiff was being attacked by Ellerbe and used excessive force against Plaintiff, who allegedly did not resist.

Plaintiff's allegations are insufficient to establish an IIED claim against Defendants Spears, Shoop, and Greene, as Plaintiff does not allege enough facts to establish that they knew there was a high probability that their conduct would cause severe emotional distress. "The requirement of finding 'extreme and outrageous' conduct is a demanding one, and it will not be met in every instance where a plaintiff has stated a claim under the Eighth Amendment (which itself sets a high bar)." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016).

Plaintiff also alleges a battery claim against Defendant Klingele under Illinois state law. "A battery is defined as the unauthorized touching of the person of another." *Sekerez v. Rush Univ. Med. Ctr.*, 954 N.E.2d 383, 394 (Ill. App. Ct. 2011). In Illinois, a person commits battery when "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85–86 (Ill. App. Ct. 2011) (quoting Restatement (Second) of Torts § 13 (1965)). Plaintiff will be allowed to proceed on a state law battery claim against Defendant Klingele, who sprayed him in the face with pepper spray, twisted and jerked his head, smashed his face up against a window, and pressed his forearm against Plaintiff's neck on December 12, 2022.

**IT IS THEREFORE ORDERED:**

1.  According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on (1) an Eighth Amendment failure to protect claim against

Defendants Spears, Shoop, and Klingele; (2) an Eighth Amendment failure to intervene claim against Defendant Klingele; (3) an Eighth Amendment deliberate indifference claim against Defendant Shoop; (4) a First Amendment retaliation claim against Defendant Greene; (5) an Illinois state law claim of intentional infliction of emotional distress against Defendant Klingele; and (6) an Illinois state law claim of battery against Defendant Klingele. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

3. The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

4. Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer

or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

5. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

7. Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

8. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9. Plaintiff shall be provided a copy of all pertinent medical records upon request.

10. Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

11. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: 3/15/2024

s/ James E. Shadid
James E. Shadid
United States District Judge
